F I L E D
United States Court of Appeals
Tenth Circuit

NOV 7 2000

PATRICK FISHER
Clerk

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID DEAN AUSTIN,

Defendant-Appellant.

No. 00-4061

Appeal from the United States District Court
for the District of Utah
(D.C. No. 99-CR-408)

Robert H. Copier, Attorney, of Salt Lake City, Utah, for Appellant.

Leshia Marie Lee-Dixon, Assistant United States Attorney, (Paul M. Warner, United States Attorney, with her on the brief) of Salt Lake City, Utah, for Appellee.

Before **EBEL, HOLLOWAY,** and **MURPHY,** Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Defendant David Dean Austin was convicted by a jury on one count of possessing stolen mail in violation of 18 U.S.C. § 1708. After his conviction, Austin filed a motion for a new trial and a motion for judgment of acquittal. The district court denied the motions, sentencing Austin to the custody of the Bureau of Prisons for two months and seven days, imposing a thirty-six month term of supervised release, and ordering him to pay restitution in the amount of $986.88 to Bank One. Austin appeals the district court's decision. This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**. Among other things, this court holds the Sixth Amendment does not prohibit a district court from instructing a jury that any comments it appends to its verdict must be consistent with the verdict.

## II. BACKGROUND

The following statement of facts is set forth in the light most favorable to the government, the prevailing party below, with all reasonable inferences from the record drawn in its favor. *See United States v. Haslip*, 160 F.3d 649, 653 (10th Cir. 1998). On May 6, 1999, Nancy Ball, a Double BN Auto employee, prepared several checks for payment to the company's creditors from Double BN Auto's business account. Ball placed them in the company's mailbox outside and raised the red flag to notify the postal service of the outgoing mail. Four days

later, Austin cashed one of these checks. Upon cashing the check, Austin presented his picture identification to the teller and, in compliance with the bank's policy for non-bank customers, placed a fingerprint on the check. Although the original check was payable to Harding Glass, the check had been altered to name Austin as the payee. The amount of the check also had been altered.

After Double BN Auto informed the bank that the check cashed by Austin was altered, it was turned over to postal inspectors. On July 13, 1999, Austin met with two postal inspectors, Agents Dennis Fernald and Terry Wilson. The inspectors asked Austin about the check. He explained that Jack Robinson gave him the check to cash, half of which Austin returned to Robinson and half of which he kept to buy groceries for the home in which he, Robinson, and others resided. Austin indicated that he felt forced to cash the check. During his interview with Agents Fernald and Wilson, he informed the inspectors that it was a "bad check," that he saw Robinson "wash" other stolen checks, and that he was aware of other people cashing these checks.

During its deliberations, the jury sent a note to the district court judge, requesting permission to write a note expressing an opinion in addition to rendering a verdict. Outside the presence of the jury, the judge asked both parties whether they objected to the granting of such permission. Neither party objected.

At that time, the judge indicated to the parties that he believed the jury would find the defendant not guilty.

The judge granted the jury's request, responding that the jury's attached statement could not conflict with its verdict. Austin objected to this response. The jury subsequently returned a guilty verdict. The statement attached to the verdict indicated the jury believed coercion or Austin's perception of coercion contributed to his behavior. The jury recommended that the court consider this in its final disposition. The jury was polled; all members indicated their verdict was unanimous.

On December 28, 1999, Austin filed a motion for a new trial and a motion for judgment of acquittal. The district court judge denied both motions. On appeal, Austin argues the district court erred in denying him a new trial. He claims the district court violated his Sixth Amendment rights when it caused the jury to return a guilty verdict by requiring that its verdict and written statement not conflict. He further supports his appeal by claiming the jury disregarded the court's instruction forbidding it to consider punishment in its deliberations. Austin also argues the district court erred in denying his motion for judgment of acquittal because there was insufficient evidence to uphold the conviction.

III. DISCUSSION

A. Motion for New Trial

This court reviews the district court's denial of a motion for a new trial under an abuse of discretion standard. *See United States v. Byrne*, 171 F.3d 1231, 1235 (10th Cir. 1999). Under this standard, the district court's decision is overturned only if it is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotations omitted). When the denial of a new trial turns on an issue of law, however, the determination is reviewed *de novo*. *See United States v. Ailsworth*, 138 F.3d 843, 846 (10th Cir.), *cert. denied*, 525 U.S. 896 (1998).

Austin claims the district court violated his Sixth Amendment rights by its response to the jury's request to express an opinion in addition to rendering a verdict. He asserts that absent the district court's response that the verdict and statement be consistent, the jury would have rendered a not guilty verdict and attached a note indicating that the jurors' believed Austin was not guilty because of coercion.[1]

Whether the Sixth Amendment prohibits a judge from responding to a jury question by directing it to make its verdict and any appended comments consistent

---

[1]To support his assertion, Austin relies on the district court judge's statement to the parties that he thought the jury was going to render a not guilty verdict. Austin's reliance is misplaced. The judge's statement, which was made outside the presence of the jury, was mere speculation, just as Austin's claim is mere speculation. Although the judge's statement turned out to be inaccurate, it was not prejudicial.

is a question of law that this court reviews *de novo*. Upon receiving the jury's request, the district court followed the proper course. It informed both parties of its content and provided them with an opportunity to be heard in open court. *See United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir. 1992) ("A question from the jury must be answered in open court and only after providing counsel an opportunity to be heard."). A review of the record reveals that the judge considered Austin's objection to his proposed response but overruled it in favor of preempting a possible invalidated verdict.[2]

While the Sixth Amendment affords defendants certain protections in criminal prosecutions, it does not prohibit the type of response given by the district court judge. The Sixth Amendment gives a defendant "the right to a speedy and public trial, by an impartial jury." U.S. Const. amend. VI. This right includes a defendant's right to have a jury, rather than a judge, find him guilty beyond a reasonable doubt. *See Sullivan v. Louisiana*, 508 U.S. 275, 277-78 (1993). The jury must be drawn from a fair cross section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). A defendant has the right to present a defense, including the right to present his version of the facts, the right to confront the prosecution's witnesses, and the right to present his own

---

[2]It is important to point out that the judge did not direct the jury on what it *must* do but only on what it *could not* do. It simply could not make a statement inconsistent with the verdict.

-6-

witnesses. *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988). The Sixth Amendment also guarantees a defendant's right to counsel at every stage of the prosecution in which the absence of counsel might jeopardize his right to a fair trial. *See Estelle v. Smith*, 451 U.S. 454, 470 (1981). The district court judge's response in this case was not inconsistent with these Sixth Amendment rights.

This court has not found a single case indicating that the Sixth Amendment prohibits a district court from instructing a jury that any comments it appends to its verdict must be consistent with the verdict. Moreover, Austin has not cited a single case that even remotely supports such a proposition. Accordingly, this court concludes Austin's Sixth Amendment rights were not violated.

Austin further argues the district court erred in not granting a new trial because the jury disregarded Instruction Number Six by considering the sentence that would be imposed.[3] The district court's decision to deny Austin's new trial motion "may constitute an abuse of discretion only if [it is] based on an erroneous conclusion of law, a clearly erroneous finding of fact[,] or a manifest error in judgment." *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1246 (10th Cir. 1998). This court concludes the district court did not abuse its discretion.

---

[3]Instruction Number Six prohibits the jury from considering in its deliberations the punishment provided by law for the crime of possessing stolen mail.

Generally, a jury's recommendation of leniency does not affect the validity of the verdict. *See Rogers v. United States*, 422 U.S. 35, 38 (1975). The jury's statement in this case plainly appears to be the type of recommendation envisioned by this rule. The statement indicates the jury believed Austin was guilty and that, to some degree, his criminal behavior was the result of coercion. It further suggests that the jury believed a finding of coercion was consistent with a finding of guilt but also a mitigating factor to be considered at sentencing. Such unnecessary statements made by the jury may be disregarded as surplusage. *See Ailsworth*, 138 F.3d at 846.

When there is doubt cast upon the unqualified nature of the verdict, however, this court must take a closer look at the circumstances of the jury's recommendation. *See id.* at 846-47. No such doubt exists in this case. The note was consistent with the verdict. The district court judge polled the jurors, each of whom concurred with the guilty verdict without any qualification. *Cf. Cook v. United States*, 379 F.2d 966, 968-70 (5th Cir. 1967) (holding the trial court committed reversible error by not questioning jurors about statements made during poll in which most jurors qualified their pronouncement of guilt by reference to note attached to verdict requesting leniency). Unlike the court in *Cook*, the district court had no reason to question the jurors about the influence of

their request for leniency on the verdict. Accordingly, this court concludes the jury did not disregard its instructions.[4]

B. Motion for Judgment of Acquittal

This court reviews a denial of a motion for judgment of acquittal *de novo*, viewing the evidence in the light most favorable to the government in determining if there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt. *See Ailsworth*, 138 F.3d at 846; *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982). The standard requires this court to review the trial record to determine if there is evidence to support the verdict. *See United States v. Hoenscheidt*, 7 F.3d 1528, 1530 (10th Cir. 1993). This court, however, does not weigh the evidence or consider the credibility of the witnesses in making its determination. *See United States v. Haslip*, 160 F.3d 649, 653 (10th Cir. 1998). Moreover, reversal is only appropriate "if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wacker*, 72 F.3d 1453, 1462-63 (10th Cir. 1995).

Without challenging specific evidence, Austin claims the government did not prove its case beyond a reasonable doubt. Specifically, Austin argues the

---

[4]Austin argues that because the jury disregarded Instruction Number Six, it must have disregarded the other jury instructions. This court need not address the issue of whether the jurors disregarded the other instructions because this court concludes the jury did not disregard Instruction Number Six.

government failed to provide any direct or circumstantial evidence to establish that he knew the check was stolen at the time he possessed it. A review of the trial record, however, indicates the jury could have inferred knowledge from the evidence presented by the prosecution.

The record includes testimony from Double BN Auto employee Nancy Ball, who indicated that the check made payable to Austin was signed by someone who had forged her signature. After viewing the check, she indicated that it was a Double BN Auto business check. Ball further testified that the check was altered from the original amount and rewritten for the amount of $986.88. The check was admitted into evidence for the jury to examine.

The jury heard Agent Terry Wilson's testimony, which included statements Austin made to him during the interview in which Austin was questioned about the stolen check. Wilson testified that Austin acknowledged that he knew the check was "bad," that he witnessed Robinson wash other checks, and that he knew other people were cashing these checks. Wilson further testified that Austin clarified during the interview that the check neither belonged to him nor Robinson. Agent Dennis Fernald corroborated Wilson's statements, testifying that Austin indicated during the interview that he knew Robinson was washing other checks at the residence and that other people were cashing them. Agent

Fernald further testified that Austin indicated he felt forced to cash the check given to him by Robinson.

Austin's trial testimony contradicted the testimony presented by the prosecution. He testified that he did not know the check was stolen at the time he possessed it and that he did not know Robinson was washing checks until after he cashed the check he had been given. Austin further testified that Robinson filled out the check, but he could not recall who signed it. Importantly, he indicated in his testimony that he was not afraid of Robinson.

The question of Austin's knowledge that the check was stolen turns on the degree of credibility the jury afforded the various witnesses and the inferences the jury might reasonably have drawn from the evidence, matters peculiarly within its province. The jury obviously afforded the testimony from the postal inspectors more credibility than Austin's testimony. Specifically, a rational juror could infer knowledge from Austin's admissions to the postal inspectors. Furthermore, the circumstances surrounding the check itself, namely that Robinson had filled in the check but not signed it and that the check was for such an unusual amount given Robinson's purpose in writing it, supports a finding of knowledge. Resolving the issue of credibility and drawing all permissible inferences in the light most favorable to the government, this court concludes there was sufficient evidence

admitted at trial from which a reasonable jury could find that Austin knew the check was stolen.

IV. CONCLUSION

This court concludes the district court did not err in denying Austin's motions for a new trial and judgment of acquittal. The district court did not violate Austin's Sixth Amendment rights, and the jury did not disregard the instruction to not consider punishment in its deliberations. Reviewing the record in the light most favorable to the government, this court further concludes there was sufficient evidence from which a reasonable jury could find Austin guilty beyond a reasonable doubt on the charged offense.