**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2004**

**Patrick J. Fisher**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CARLTON HUMPHREY,

Defendant - Appellant.

Nos. 01-8047 & 01-8084
(D. Wyoming)
(D.Ct. Nos. 97-CR-104-D &
97-CR-104-01-D)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NANCY REGAN,

Defendant - Appellant.

No. 01-8048
(D. Wyoming)
(D.Ct. No. 97-CR-104-02-D)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This case returns to us after remand. *See United States v. Humphrey,* 208 F.3d 1190 (10th Cir. 2000). Carlton Humphrey and Nancy Regan appeal the district court's latest denial of their motions for new trial based on juror misconduct, and Humphrey appeals the district court's imposition of consecutive sentences. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

## I. BACKGROUND

On January 30, 1998, a jury convicted Humphrey and Regan of conspiracy to possess methamphetamine with intent to distribute and conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 (Count I), and possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) (Count II). Each filed a motion for new trial.

### A. *Juror Misconduct*

On May 7, 1998, prior to sentencing, Regan informed the court on the record of possible juror misconduct based on a report from a juror (Juror #1) that another juror (Juror #2), a female from Douglas, Wyoming, had prior undisclosed[2]

---

[1]We grant all pending and unopposed motions: 1) Humphrey's Motion to File Brief Under Seal, 2) the Government's Motion to File Brief Under Seal, 3) the Government's Motion to Stay, or Hold Proceedings on Appeal in Abeyance, Pending Further District Court Proceedings, and 4) Regan's Motion to Supplement the Record.

[2]During voir dire, all of the jurors selected to serve swore they had no prior knowledge of either Humphrey or Regan.

knowledge of Humphrey's reputation for drug dealing that she shared with the jury during deliberations.[3] Regan followed up with a written report to the court in which she detailed the allegations. In response, the court conducted an investigation in chambers in which it questioned Juror #1 and the presiding juror under oath.[4] On June 30, 1998, Juror #1 testified that Juror #2, during deliberations, stated "Oh, my God, I live in Douglas, and I even know the Humphreys' reputation." (01-8047 R. Vol. 22 at 6.) According to Juror #1, Juror #2 later stated during deliberations, "You want him out selling drugs to your daughter?" (*Id.* at 9.) In response to this statement, Juror #1 testified that the presiding juror brought an end to the discussion as inappropriate. In her written report to the court, Regan indicated Juror #1 was upset by the declarations of Juror #2 and shared her concern with Juror #3 during a cigarette break. They discussed whether they should bring the matter to the court's attention. On August 10, 1998, the presiding juror testified that his memory was good and that during deliberations no juror made a remark about Humphrey's reputation, as Juror #1 claimed. He acknowledged bringing an end to a discussion about an unrelated subject because it was not germane to the case. He testified if any juror

---

[3]Humphrey joined in Regan's concerns; the parties thus effectively amended their earlier motions for new trial to include an allegation of juror misconduct. *See Humphrey,* 208 F.3d at 1198.

[4]The court permitted counsel to ask follow-up questions.

had brought up Humphrey's reputation, he would have asked the juror to report this knowledge to the judge or he would have reported it himself.

Based on its investigation, the court denied the motions for new trial. On December 15, 1998, Humphrey was sentenced to 304 months imprisonment on each count, to run concurrently. Regan was sentenced to 247 months imprisonment on each count, to run concurrently. Subsequently, they filed their first appeal.

## B.   *First Appeal*

In their first appeal, Humphrey and Regan raised a number of issues, including the failure of the district court to order a new trial on the basis of juror misconduct.[5] In a decision issued April 4, 2000, we concluded the district court abused its discretion in cutting off its investigation without questioning Juror #2 and Juror #3, and remanded the case for further investigation and findings.[6] *Id.* at 1200. Specifically, we instructed that "the trial judge should develop the facts by hearings such as were conducted here, but were cut off without getting

---

[5]The allegation of juror misconduct encompassed three possible irregularities: 1) under direct questioning from the district judge, Juror #2 may have concealed her knowledge of Humphrey or his reputation, 2) Juror #2 may have harbored an undisclosed bias against Humphrey, and 3) Juror #2 may have inappropriately injected forbidden knowledge of Humphrey or his reputation into jury deliberations. *See Humphrey,* 208 F.3d at 1200-01.

[6]We also reversed Regan's conviction on Count II. *Id.* at 1208. The Government subsequently dismissed Count II against Regan.

-4-

information from Juror #3 who was said to have discussed the reputation remark with Juror #1, or importantly from Juror # 2 from Douglas." *Id.* at 1201.

We further instructed:

> Based on such hearings, investigation and findings, the trial judges should exercise their sound discretion, as can be done on remand here, to determine whether a new trial must be ordered or whether the verdicts rendered may stand because the Defendants' constitutional right to a fair trial was not infringed.

*Id.* We also remanded for re-sentencing of Humphrey because the district court improperly enhanced his offense level by two levels pursuant to United States Sentencing Commission, *Guidelines Manual,* § 3B1.4 (Nov. 1995) (using a minor to commit a crime). *Id.* at 1212-13.

### C.    Remand

On remand, the district court conducted a further investigation and made additional findings with respect to alleged juror misconduct. On December 19, 2000, nearly three years after the trial, the court questioned Juror #2 and Juror #3 under oath. Juror #2 testified she had no prior knowledge of Humphrey; nor did she hear any other juror express prior knowledge of Humphrey at any time. The judge specifically asked Juror #2 if she or any other juror had made the statements attributed to her by Juror #1. She answered that she could recall no such

statements[7] and any knowledge she acquired about Humphrey was acquired from trial evidence only. She claimed her memory was good and no such statements were made. Juror #3 testified he did not recall ever hearing another juror make a comment at any time during the trial proceedings, including jury deliberations, which would suggest prior knowledge of Humphrey or his reputation. When pressed as to whether he simply did not recall such statements, he plainly stated no such statements were made. He recalled a discussion with another juror during a smoke break about the propriety of the seizure of some of the evidence in the case. He recalled this juror and he possibly discussed bringing some matter to the attention of the judge. Although he could not recall what that was, he testified it did not concern a statement indicating prior knowledge of Humphrey or his reputation.[8]

---

[7]Juror #2 testified there might have been some discussion of juveniles and drugs during deliberations, but she could not recall the exact context of the discussion. Juror #3 recalled a statement during deliberations of the kind suggested by Juror #1 ("You want him out selling drugs to your daughter?" (01-8047 R. Vol. 22 at 9).) However, he testified the comment was based on evidence adduced at trial, not extraneous information. The judge noted that juveniles testified at trial and he was not going to permit further inquiry into any discussion the jurors might have conducted relative to juveniles. *See* FED. R. EVID. 606(b) (limiting inquiry into statements made during jury deliberations).

[8]Out of an abundance of caution, the district court examined another juror from Douglas who sat through voir dire, was selected for service, heard opening arguments and was then excused due to a child's illness (Juror #4). Therefore, she played no part in jury deliberations when the alleged improper remark was made. On January 3, 2001, she testified under oath that at no time, either prior to, during or after her selection as a juror, did any juror, including herself, express knowledge of Humphrey or his reputation. She had never heard of Humphrey before the trial.

After hearing the testimony, the court refused Regan's request to question all of the female jurors and again denied the motions for new trial, finding "no credible basis on which to conclude that any juror in this case knew anything about either Defendants [sic] or either's reputation prior to trial, or that any comment about either Defendant's reputation extraneous to the trial reached the jury." (01-8047 R. Vol. 2, Docket Entry 236 at 6.)  The court characterized Juror #1's allegations as undeserving of belief, "particularly in light of the credible, firm, and contrary testimony of the other jurors."[9]  (*Id.*)  The court re-sentenced Humphrey to 240 months imprisonment on Count I and forty-eight months imprisonment on Count II, to run consecutively.  Regan appeals the denial of her motion for new trial; Humphrey does likewise, and also appeals his consecutive sentence.

## II.  STANDARD OF REVIEW

We review denial of a motion for new trial for an abuse of discretion. *United States v. Austin,* 231 F.3d 1278, 1281 (10th Cir. 2000).  We will only reverse the district court's decision if it is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation omitted).  Stated differently, we will

---

[9]At one point, the judge averred that "[Juror #1's] recollection of events can be read in a benign way or in a way that would taint the whole process here." (01-8047 R. Vol. 25 at 23-24.)  "I have to think that these comments [comments attributed to Juror #2 by Juror #1], if they were made at all, were made in the process of deliberations, people making comments about the fact that there was a young girl involved here." (*Id.* at 23.)

overturn the decision "if [it is] based on an erroneous conclusion of law, a clearly erroneous finding of fact[,] or a manifest error in judgment." *Id.* at 1282 (quotation omitted). "[A] motion for new trial is regarded with disfavor and should only be granted with great caution." *United States v. Quintanilla,* 193 F.3d 1139, 1146 (10th Cir. 1999), *cert. denied,* 529 U.S. 1029 (2000). "In responding to allegations of juror bias that arise during a trial, the trial court's decision as to how to proceed will not be reversed except for an abuse of discretion." *United States v. Bradshaw,* 787 F.2d 1385, 1390 (10th Cir. 1986).

We review *de novo* the district court's interpretation of the United States Sentencing Guidelines. *United States v. Walters,* 269 F.3d 1207, 1214 (10th Cir. 2001).

## III. DISCUSSION

### A. *Juror Misconduct*

The Sixth Amendment to the United States Constitution guarantees, *inter alia*, the right to an impartial jury, "a jury capable and willing to decide the case solely on the evidence before it." *Gonzales v. Thomas,* 99 F.3d 978, 983 (10th Cir. 1996) (quotation omitted), *cert. denied,* 520 U.S. 1159 (1997). "When a party's suggestion that a jury is biased is not frivolous, the district court ordinarily should undertake an adequate inquiry into the questions of whether the bias actually existed and whether it was prejudicial." *Bradshaw,* 787 F.2d at 1390

(quotation omitted); *see also Humphrey,* 208 F.3d at 1201 (when juror misconduct is alleged, adequate investigation required to enable presiding judge to rule on motion for new trial).[10]

Regan argues the district court erred in relying on the testimony of Juror #2 and Juror #3 because their memories had faded since the jury deliberated and were, as a consequence, unreliable. She also contends each had a motive to dissemble on the question of whether extraneous information entered jury deliberations because each feared appearing to have disobeyed the court's instruction to rely only on the evidence adduced at trial in reaching a verdict. Humphrey maintains Juror #2's testimony is unreliable because of the motive to dissemble and Juror #3's testimony is unreliable because of his faded memory. Neither the "faded memory" nor the "motive to dissemble" argument is persuasive.

As to the "faded memory" argument, both Juror #2 and Juror #3 testified their memories were clear as to whether any juror made statements evidencing prior knowledge of Humphrey or his reputation. Each asserted no such statement was made. To like effect was the testimony of the presiding juror, given within eight months of the verdicts. As to the "motive to dissemble" argument, there is

---

[10]The district court's decision to deny the motions for new trial, which we affirm, is grounded on a finding that the parties failed to demonstrate bias. This being so, we need not reach the question of prejudice.

-9-

no evidence in the record to support it. Neither will we presume a juror disregarded the court's instruction to confine deliberations to the evidence presented at trial. We conclude the district court did not clearly err in finding the testimony of the presiding juror, Juror #2 and Juror #3 to be more persuasive than that of Juror #1. Therefore, the court did not abuse its discretion in denying the motions for new trial.

Regan also questions the sufficiency of the court's investigation. "A full investigation of this issue . . . should include the questioning of each of the female jurors, if not the entire jury, under oath." (Appellant Regan Br. at 15.) We previously ordered that the district court, on remand, "must investigate sufficiently to assure itself that constitutional rights of the criminal defendant have not been violated." *Id.* at 1199 (quotation omitted). "Our gnawing concern" was "what the judge might have found if he heard the testimony of Juror # 3 and the important Juror # 2 from Douglas." *Id.* at 1200. The district court has satisfied our concerns. The manner in which it conducted its investigation on remand, in particular the breadth of its investigation, is not an abuse of discretion. An expansive investigation of the sort suggested by Regan is not only unnecessary to a determination of the allegation of juror misconduct, it would come chillingly close to violating the proscription against inquiring into a jury's verdict. *See* FED. R. EVID. 606(b).

### B.       *Humphrey's Consecutive Sentence*

Humphrey was originally sentenced on his two counts of conviction based on a total combined offense level of 38 and Criminal History Category III.  On remand, the district court re-sentenced him based on a revised total combined offense level of 36 (representing removal of the two level enhancement under USSG § 3B1.4 for use of a minor in commission of the offense), exposing Humphrey to a sentencing range of 235 to 293 months.  The court determined the total punishment was 288 months.  Construing the statutory maximum penalty on each count to be 240 months,[11] the court re-sentenced Humphrey to 240 months imprisonment on Count I and 48 months imprisonment on Count II, to run consecutively.

Humphrey contends the court could not impose a sentence in excess of 240 months, the statutory maximum for each count.  To do otherwise, in his view, would violate the rule announced in *Apprendi v. New Jersey,* 530 U.S. 466 (2000)

---

[11]Humphrey was originally sentenced under the quantity-enhanced provisions of 21 U.S.C. § 841(b)(1)(B) (providing a statutory maximum term of imprisonment of forty years on each count).  The judge, not the jury, made the quantity finding.  Humphrey's convictions pre-dated the seminal case of *Apprendi*:  "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.   The court, recognizing *Apprendi*, re-sentenced Humphrey under 21 U.S.C. § 841(b)(1)(C), which provides a statutory maximum term of imprisonment of twenty years on each count irrespective of drug quantity.  *See United States v. Bailey,* 286 F.3d 1219, 1222 (10th Cir. 2002), *cert. denied,* 537 U.S. 877 (2002).

and the plain language of USSG § 5G1.2(d).  His constitutional and Guideline arguments are unavailing.

*Apprendi* forbids a sentence for "a crime" in excess of the statutory maximum penalty unless the facts to support the increased sentence are submitted to a jury and proved beyond a reasonable doubt.  *Apprendi,* 530 U.S. at 490.  *Apprendi* does not forbid imposing consecutive sentences where the counts of conviction each carry a statutory maximum penalty, so long as the sentence for each offense is within the applicable statutory maximum.  Here, the district court followed *Apprendi* and rendered a sentence on each count that was within the statutory maximum term of 240 months specified for drug offenses where no quantity is alleged or proven.

As to the language of USSG § 5G1.2(d), it is, as Humphrey suggests, plain:

> (d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.  In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

It is also mandatory.  *United States v. Price,* 265 F.3d 1097, 1109 (10th Cir. 2001), *cert. denied,* 535 U.S. 1099 (2002); *United States v. Lott,* 310 F.3d 1231, 1243 (10th Cir. 2002), *cert. denied*, 538 U.S. 936, and *cert.  denied*, 538 U.S. 991 (2003).  "Section 5G1.2 addresses the interplay between statutory maximums and

sentences arrived at through application of the Guidelines in sentencing multi-count indictments." *Lott,* 310 F.3d at 1242. The procedure is the following. The sentencing judge selects the total punishment from within the applicable Guideline range. "[T]he total punishment is the sentence arrived at for all counts through application of the Guidelines, including determination of the base offense levels, application of grouping provisions, and calculation of other adjustments." *Id.* (quotation omitted). In line with *Apprendi*, "[t]he district court may not impose a sentence above the statutory maximum for any particular count, but it will be required under § 5G1.2(d) to impose consecutive sentences 'to produce a combined sentence equal to the total punishment.' USSG § 5G1.2(d)." *Id.* at 1243. The district court's sentence complied with both *Apprendi* and the Guidelines.

Accordingly, we **AFFIRM** the district court's denial of the motions for new trial and its resentencing of Humphrey to consecutive terms.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge