FILED
United States Court of Appeals
Tenth Circuit

August 11, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MAX MENRIQUEZ FLORES,

Defendant - Appellant.

No. 08-2165
(D.C. No. 07-CR-545-WJ)
(District of New Mexico)

---

ORDER AND JUDGMENT[*]

---

Before **LUCERO, HOLLOWAY** and **McCONNELL,** Circuit Judges.

---

Defendant-appellant Max Menriquez Flores was convicted at jury trial on all four

counts against him:  possession of methamphetamine with intent to distribute; carrying a

firearm during and in relation to a drug trafficking crime; felon in possession of a firearm;

and felon in possession of ammunition.  He was sentenced to concurrent terms of 120

months on three of the counts, and a consecutive sentence of 60 months on the count of

carrying a firearm during a drug trafficking crime, for a total sentence of 180 months'

imprisonment, to be followed by four years of supervised release.  He was also ordered to

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P.32.1 and 10th Cir. R. 32.1.

pay a special assessment of $400.00.

Mr. Flores now brings this direct appeal, which comes under the jurisdiction of this court pursuant to 28 U.S.C. § 1291. Flores challenges the sufficiency of the evidence, an evidentiary ruling that permitted the government to elicit testimony that he was on probation at the time of the offenses, and the trial court's decision to deny an untimely motion for new trial that was based on alleged juror and witness misconduct.

**I**

Authorities in Silver City, New Mexico, were keeping watch on the house where defendant lived with his girlfriend (who had become his wife at the time of trial) because they had received reports of unusual traffic at the house at all hours, circumstances that often indicate trafficking in illegal drugs. Officers learned that the girlfriend owned the house; that defendant lived there; and that he frequently drove a blue Dodge pickup truck. Officers were informed that defendant's driver's license had been suspended and that a judge had issued an order requiring, under state law, any officer who stopped defendant while driving to place him under arrest.

On the first day of surveillance, May 16, 2006, the officers watching the residence saw the blue Dodge leave. Officers followed the truck but could not identify the occupants because of its dark-tinted windows. The truck pulled into a grocery store, and a number of officers converged on the scene. Officers were able to identify defendant and his girlfriend, Ms. Arizaga,[1] as they left the truck and went in the store.

---

[1]Mr. Flores and Ms. Arizaga married before the case came to trial.

-2-

When the two emerged from the store, a marked police car put on its lights. A uniformed officer approached and directed defendant to step to the rear of the truck. Before complying, defendant tossed the keys into the seat of the truck and locked the door as he shut it. Defendant was informed that he was being arrested for driving with a suspended license. As defendant was being taken to the squad car, other officers in unmarked cars arrived. Defendant called out to his girlfriend, telling her not to talk to the officers.

Police then summoned a K-9 unit, and when the dog alerted to the truck they obtained a search warrant for it. While officers were waiting for the warrant, the girlfriend returned to the grocery store with another set of keys to the pickup. Officers told her that she could not take it because they were awaiting the warrant. They asked her to return, however, so they could use her keys when they got the warrant, rather than be compelled to make an entry by force into the locked truck. The girlfriend left and did not return.

A few hours later the warrant was obtained and executed. Officers found a pistol wedged between the driver's seat and the center console. They also found ammunition, cocaine, methamphetamine, three sets of scales, and baggies. A number of the items were sent for fingerprint analysis; none contained defendant's prints.

Defendant's father testified at trial as the sole defense witness. He said that the truck and the gun belonged to him. He said that he had loaned the truck to defendant earlier on the day of the arrest, because defendant was doing some work on his

girlfriend's house and had some trash to haul away. He said that he regularly kept the pistol in the truck because he frequently had grandchildren visit his home and he didn't want to keep the gun in the house for that reason. Also, he said that another son, Gilbert, lived with him, and Gilbert was on probation and could not be in a residence where there was a gun.

Defendant's father admitted that it was difficult for him to get into the truck because it had been equipped with a "lifter" and oversized tires so that it sat considerably higher than an ordinary pickup. He did not remember installing the "lifter" but said that he probably had. He said that he had put on the oversized tires but could not remember when he did that. The elder Mr. Flores was 78 years old and only 5'8" tall. Defendant is 6'4" tall and weighs 340 pounds. Defendant's father did not recognize some of the items in the truck, including a portable music device and dietary supplements used by weight lifters. He did not know anything about the scales or drugs.

## II

Defendant Flores contends that the evidence was insufficient to prove that he knowingly possessed the gun, the ammunition, and the drugs found in the blue pickup. We review the sufficiency of the evidence de novo, but we take the evidence and all reasonable inferences therefrom in the light most favorable to the verdicts and ask only whether a reasonable jury so viewing the evidence could find the defendant guilty beyond a reasonable doubt. *United States v. Zunie*, 444 F.3d 1230, 1233 (10th Cir. 2006).

Defendant's argument stresses that the truck and the gun were owned by his father,

not by the defendant; that defendant's brother Gilbert also had access to the truck and was on probation for a drug offense; and that defendant's fingerprints were not found on any of the contraband items. Defendant asserts that there is no other evidence connecting him to these or any other drugs. Defendant contends this is insufficient to establish a direct link between him and the contraband. Defendant also relies on his father's testimony that he always kept the gun in the truck (because he had grandchildren who frequently visited his house and because his son, Gilbert, lived with him and was not allowed to possess a firearm), that he permitted defendant to borrow the pickup on the day of his arrest so that he could remove some trash resulting from remodeling efforts on his girlfriend's home, and that he forgot to tell defendant that the pistol was in the truck.

Defendant's argument is unpersuasive because there was other evidence, contrary to his contention, and because the jury was not required to accept the testimony of defendant's father. The additional evidence, although still not overwhelming, was material. We will mention a few points. Defendant's conduct upon contact by the police could support an inference of guilty knowledge. As noted, he tossed the keys into the truck and locked it, then told his girlfriend not to talk to the officers. A jury could draw an inference that he knew there was something to hide.

There was evidence to counter the father's testimony that had suggested that defendant did not use the pickup often. The father admitted that it was difficult for him to even get into the truck because of the way it had been elevated substantially above the height of a normal pickup. The officer who later drove the pickup from the grocery store

to the police impoundment lot testified that he felt like a child trying to drive the thing because the front seat had been smashed down. The jury could infer this was because the 340-pound defendant frequently drove the truck. The father did not know anything about the drugs, the scales and other paraphernalia, the music device, or the dietary supplements found in the truck, again supporting the inference that someone else usually drove it. And the jury could have inferred that the dietary supplements, which the evidence showed were frequently used by weight lifters, were more likely property of the defendant than of his diminutive, 78 year-old father. The pistol and the methamphetamine were found in immediate proximity to the driver's seat.

We hold that the evidence taken as a whole was sufficient. The jury was entitled to disbelieve the father's testimony, of course, and the prosecution established good reasons for disbelieving it on crucial points, especially as to whether defendant frequently drove the pickup. The evidence of defendant's conduct at the time of arrest adds considerable weight to the government's case. Under the governing standard of review, we hold that the verdicts must stand.

### III

Flores contends that it was prejudicial error to admit evidence that he had been on probation at the time of his arrest. To put this issue into context, it is necessary to detail the trial events that immediately preceded the judge's decision to admit the challenged evidence.

As noted, defendant's father was the only defense witness at trial. The older Mr.

Flores testified that he owned the truck and the gun, which was registered to him. He testified that he always kept the gun in the truck. One reason for that was that his son Gilbert lived with him and Gilbert could not be in a house with a gun because Gilbert was on probation. Gilbert sometimes used, or "tried to" use the pickup, defendant's father also testified. On re-direct examination, defense counsel asked Mr. Flores what Gilbert was on probation for, and Mr. Flores answered, "Drugs." That was the last question on re-direct.

At this point the prosecutor asked for a bench conference and told the trial judge that defendant was also on probation and that he would like to ask Mr. Flores if he knew that. The judge took a recess to consult the rules of evidence. The bench conference then resumed.

The judge noted that the inference suggested by the defense evidence was that the drugs may have belonged to Gilbert. He then asked for a "tender" of the government's proposed questioning. The lead prosecutor said that "to rebut that inference" the prosecution would like to ask the elder Mr. Flores if defendant was also on probation. The court asked whether the government proposed to go into the offense for which defendant was on probation. The prosecutor, who at that moment did not know the specific offense for which defendant was on probation, said that the government would not try to go into that, but would merely ask Mr. Flores if he knew that defendant was on probation.

At this point the defense lawyer said "it really doesn't go to the inference . . . that

-7-

the drugs could have been Gilbert Flores'." After some more conversation, the prosecutor said that the Mr. Flores would only be asked two questions – the first would be just to re-iterate testimony already given that the father kept the gun in the car because Gilbert was on probation, and the second would be whether Mr. Flores knew that defendant was also on probation.

The court then said to defense counsel: "Tell me how that is unduly prejudicial at this point." The lawyer answered: "I don't see, the way the question's phrased, how it's unduly prejudicial, Judge, if that's what it's limited to." Then the defense lawyer said: "And not go into the specifics . . ." The defense lawyer indicated that the government would be "stuck with" Mr. Flores' answer, whether yes or no.

The judge said that he thought it would be unduly prejudicial to tell the jury the offense for which defendant was on probation, although by that time the prosecutor had apparently concluded that it was driving under the influence of alcohol. The judge said that the proposed questions were proper "to allow the government to rebut the inference that the gun was placed in the truck because Gilbert's on probation . . . ."

We review properly preserved issues regarding admission of evidence under the abuse of discretion standard. But in this case, we must determine what issue was properly preserved before applying that deferential standard. In his opening brief, Flores argues primarily that the admission of evidence of his probationary status was unduly prejudicial, even in light of the fact that he had stipulated to the fact that he had a prior felony conviction. Based on trial counsel's statements on the record, the government

-8-

contends that defendant expressly disavowed at trial any challenge that the evidence was unduly prejudicial. We agree. The claim that the evidence was unduly prejudicial was waived, and there is no appeal from violation of a waived right. *United States v. Aptt*, 354 F.3d 1269, 1281 (10th Cir. 2004).[2]

In his reply brief, Flores argues that trial counsel did preserve the issue of the relevance of the evidence. Assuming *arguendo* that the attorney's remark about relevance was sufficient to preserve that issue, we find no abuse of discretion.

The evidence was relevant. The defendant had laid the evidentiary foundation to ask the jury to draw the inference that the drugs may have been Gilbert's because he sometimes used the truck and was on probation for a drug offense. Also, as to the gun, the father's testimony, if believed, could have led the jury to conclude that defendant did not know the gun was in the truck and that it was there only because the father always kept it there. And one of the reasons the father gave for keeping it in the truck was that Gilbert was under a restriction due to his probation. The credibility of that testimony is brought into question by the fact that the father let defendant, who was also on probation, use the pickup even though according to his own testimony, the father knew that the gun was there because the gun was always there. (On re-re-direct, the father said he simply forgot about the gun when he told defendant he could use the pickup.)

The defendant cannot complain that the evidence was unduly prejudicial because

---

[2]Even if we were to view the matter more favorably to defendant as a forfeiture, rather than a waiver, of the issue so as to permit review for plain error, we would conclude that defendant has not shown grounds for reversal of his conviction.

that would be invited error. The only thing said at trial about prejudice by the defense counsel was that he did not think the proposed evidence was unduly prejudicial. Moreover, the possible prejudicial impact of the evidence in question is lessened under the circumstances here because defendant was charged with felon in possession of a firearm and ammunition and consequently had stipulated that he had a prior felony conviction. Because the jury was told that defendant was a convicted felon, the additional prejudice of being told that he was on probation at the time of his arrest did not substantially outweigh the probative value of the evidence. Fed. R. Evid. 403. Accordingly, admission of the evidence under these specific circumstances was not an abuse of discretion.

We note the suggestion in the defendant's brief that the trial judge had overruled a defense request to tell the jury that defendant was on probation only for driving under the influence of alcohol. As the above quotes from the record show that was a misleading suggestion. Both parties and the judge were in agreement that nothing but the fact of probation would be mentioned. Therefore, the suggestion that the defendant was additionally prejudiced by the failure to tell the jury that he was on probation for DWI must be rejected as invited error. *See United States v. Oldbear*, 568 F.3d 814, 826 (10th Cir. 2009).

## IV

Finally, Flores contends that the district court should have held a hearing to consider evidence of alleged juror and witness misconduct at trial before denying his

untimely motion for new trial. We review the district court's denial of a motion for new

trial under the abuse of discretion standard. *United States v. Austin*, 231 F.3d 1278, 1281

(10th Cir. 2000).

Defendant filed an untimely motion for new trial (roughly six months out of time)

alleging that he was denied a fair trial because of juror and witness misconduct. He

submitted in support of his motion three affidavits describing remarks allegedly

overheard by his relatives during the trial. One of defendant's sisters said she overheard

prospective jurors say that the defendant was guilty and the trial would be a waste of

time. Another of his sisters filed an affidavit claiming that she had overheard the same

conversation. The third affidavit, from defendant's wife, said that one of the officers who

had testified discussed his testimony with other officers.[3] Defendant had retained

different attorneys about a month after trial, and the motion for new trial was submitted

by replacement counsel.

Motions for new trial ordinarily must be made within seven days after the verdict

or finding of guilty, but motions for new trial based on newly discovered evidence may be

made at any time within three years from the guilty verdict or finding. Fed. R. Crim. P.

33(b). In this case the district judge found that the motion was out of time and that

---

[3]This description of the affidavits is based on a transcript of the district judge's statements made at the time of his ruling from the bench on the motion for new trial. Neither the motion for new trial itself nor the affidavits were included in our record. Because the government does not suggest that we should not address the issues raised, we analyze them based on the district court's description of the contents of the affidavits. Counsel is reminded of the duty to provide an adequate record.

defendant had not satisfied a five-part test used in this circuit to determine if a motion is based on newly discovered evidence.[4] Further, the judge said, the motion was, in actuality, an attempt to raise ineffective assistance of trial counsel, an issue which usually must be raised in collateral proceedings.[5]

Defendant contends that the evidence clearly shows excusable neglect by trial counsel, who failed to raise the issue promptly. He says that there is "no proscription against a trial court identifying ineffective assistance of counsel as a means by which to find 'excusable neglect' to allow consideration of an untimely motion . . . ." Appellant's Opening Brief at 19. Defendant further argues that a finding of excusable neglect under Fed. R. Crim. P. 45(b) empowers the district court to extend the time for taking an action even after the specified time for that action has expired. But defendant cites no authority to support his contention that the usual rules regarding ineffective assistance of counsel do not apply in these particular circumstances. Moreover, he provides no support for his assertion that "excusable neglect" is involved. We have no way of knowing if any neglect is involved here, we do not know trial counsel's view of the events, and even if

---

[4]The judge cited *United States v. LaVallee*, in which we quoted from an earlier decision that had set out the requisite showing. We said that the defendant must show
> (1) the evidence was discovered after trial, (2) the failure to learn of the evidence was not caused by [his] own lack of diligence, (3) the new evidence is not merely impeaching, (4) the new evidence is material to the principal issues involved, and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

439 F.3d 670, 700 (10th Cir. 2006) (quoting *United States v. Quintanilla*, 193 F.3d 1139, 1147 (10th Cir. 1999)).

[5]*See United States v. Galloway*, 56 F.3d 1239 (10th Cir. 1995) (en banc).

we were to assume neglect, we have no basis for determining whether that neglect was excusable or not.[6]

In short, we agree with the trial judge that defendant failed to show that this motion was based on newly discovered evidence. We further agree that the defendant's arguments (assuming for purpose of argument that the statements in the affidavits are true) suggest a possible claim of ineffective assistance of counsel and that there are no special circumstances present here that would make it prudent to disregard our usual rule that such issues should be raised in collateral proceedings.

## Conclusion

Because we conclude that the issues raised have no merit, the judgment of the district court is AFFIRMED.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge

---

[6]We note also that defendant has cited no authority for application of the authority of the district court to provide extensions of time to motions for new trial. We previously had held that the seven-day period of Fed. R. Crim. P. 33 was jurisdictional. *See Quintanilla*, 193 F.3d at 1148. The government in this case takes the position that this rule is no longer valid in light of *Bowles v. Russell*, 551 U.S. 205 (2007), and that such rules not based on statutory commands must instead be viewed as "inflexible claims processing rules." The result in this case is practically the same, the government goes on to argue, because it objected to the untimeliness of the motion for new trial in the lower court and the rule must therefore be enforced. We need not pass on the validity of this argument. It is sufficient here to conclude, as we feel we must, that there was no abuse of discretion by the trial court in denying the motion; we need not concern ourselves with whether the district court was bound to deny the motion.